Sin-Ting Mary Liu (CA SBN 282884)
Law Offices of Sin-Ting Mary Liu
806 East Avenida Pico, Suite I-218
San Clemente, CA 92673
Tel: 949-342-4555
Fax: 760-304-8933
sintingmliu@gmail.com

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VICKIE AARON, et al., <br><br> Plaintiffs, <br><br> v. <br><br> McKESSON CORPORATION, a corporation, SMITHKLINE BEECHAM CORPORATION d/b/a GLAXOSMITHKLINE; and DOES 1 through 100, inclusive, <br><br> Defendants. | Case No.: 4:13-cv-03054-SBA <br><br> **Plaintiffs' Reply Memorandum of Law in Support of Motion to Remand for Lack of Subject Matter Jurisdiction** <br><br> **Date:** September 17, 2013 <br> **Time:** 1:00 p.m. <br> **Courtroom:** 1 - 4th Floor |

Plaintiffs in the above-captioned action, by and through the undersigned counsel, hereby submit their Reply Memorandum of Law in Support of their Motion to Remand for Lack of Subject Matter Jurisdiction, and would respectfully show the Court as follows:

## I.   INTRODUCTION

GSK advances numerous—albeit flawed—arguments in attempting to establish subject matter jurisdiction over this case. However, with respect to each of its contentions, GSK largely ignores substantial, on-point precedent instructing that this case belongs in and should be remanded to California state court, as further described below.

## II. POINTS AND AUTHORITIES IN REPLY

### A. *McKesson Is Not Fraudulently Joined as a Factual Matter Because Plaintiffs Have Satisfied California Pleading Requirements as to that Defendant.*

GSK's Response mentions only in passing the prior decision of United States District Judge Cynthia Rufe, who oversees the *Avandia* MDL to which GSK seeks transfer, wherein Judge Rufe already considered and rejected GSK's fraudulent joinder arguments and the alleged inadequacy of pleadings as to McKesson. *See In re Avandia Mktg., Sales Practices & Prods. Liab. Litig.*, 624 F. Supp. 2d 396, 417-21 (E.D. Pa. 2009). There, Judge Rufe identified the following allegation in the Plaintiffs' complaints as to McKesson:

> At all times relevant to this action, Defendant McKesson packaged, distributed, supplied, sold, placed into the stream of commerce, labeled, described, marketed, advertised, promoted, and purported to warn or to inform users regarding the risks pertaining to, and assuaged concerns about the pharmaceutical Avandia.

*Id.* at 417. Judge Rufe determined that identical language appeared in several other complaints that were also pending remand. *Id.* n.79. The court next identified the applicable standard for finding that a party is fraudulently joined—i.e., that "there is no reasonable basis in fact or colorable ground supporting Plaintiffs' claims against it." *Id.* at 417 (citation and internal quotation marks omitted). The court then determined it must measure the adequacy of plaintiffs' factual allegations and legal claims "against the legal standards of California," the state where this action was originally filed." *Id.* Judge Rufe observed that California merely requires a civil complaint to contain "[a] statement of the facts constituting the cause of action, in ordinary and concise language," which demands "only general allegations of ultimate fact . . . ." *Id.* Thus, in reviewing the passage of plaintiffs' complaints excerpted above, the court concluded:

> In pleading tort claims premising liability on, inter alia, a theory of strict product liability for failure to warn, and alleging that McKesson purported to warn consumers of Avandia's risks in the course of marketing and distributing the drug, ***Plaintiffs' allegations as to McKesson . . . appear to meet California's permissive standard***.

*Id.* at 418 (emphasis added).

Further, Judge Rufe refused to "pierce the pleadings and more searchingly assess the quality of the facts alleged," despite GSK's imploring the court to do so (as here). *Id.* "Any piercing of the allegations by the Court must not be a 'summary judgment type inquiry,' requiring the parties to marshal evidence supportive of the elements of their claims or defenses." *Id.* (citation omitted). "Rather, it must be more 'limited,' evaluating questions such as whether the facts pleaded are impossible or fatally inconsistent, as where a plaintiff suing a railroad for damages from injuries from an accident 'had uncontestedly discontinued his employment with the railroad 15 months before the accident in question.'" *Id.* (citation omitted).

In light of the above, and notwithstanding the characterizations of Plaintiffs' allegations towards McKesson in GSK's Response, Plaintiffs here have likewise met California's permissive pleading standard. Plaintiffs allege the following:

> At all times relevant hereto, Defendant McKesson distributed and marketed Avandia to the consuming public, including the Plaintiffs, herein. At all times relevant hereto, Defendant McKesson was the largest drug distributor in the United States, and among the largest distributors of Avandia in the United States. Upon information and belief, Defendant McKesson distributed Avandia that Plaintiffs and/or Decedents ingested.

(Compl. ¶ 71.) Plaintiffs further allege, *inter alia*, with respect to McKesson and GSK jointly that:

> At all times relevant herein, Defendants failed to provide sufficient warnings and instructions that would have put Plaintiffs and/or decedents and the general public on notice of the dangers and adverse effects caused by ingesting Avandia including, without limitation, risk of heart attack, congestive heart failure, and stroke.

(Compl. ¶ 83.) And, they allege:

> As a proximate and legal result of the defective and unreasonably dangerous condition of Avandia [as] tested, manufactured, and supplied by Defendants, and the lack of adequate use instructions and warnings, Decedents were cause[d] injury and death and Plaintiffs were caused to suffer and will continue to suffer the herein described injuries and damages.

(Compl. ¶ 103; *see also* ¶¶ 103, 108, 113, 118, 124, 129, 143, 149, 156, 163, 168, 179.) Plaintiffs sued

under theories of strict liability, negligence, breach of warranty, negligent misrepresentation, and other claims. (Compl. ¶¶ 88-180.) "The general rule under California law is that all of the participants in the chain of distribution can be strictly liable for injuries caused by a defective product." *Mendez v. AstraZeneca Pharms. LP*, No. 1:12-CV-00535-LJO-DLB, 2012 U.S. Dist. LEXIS 73270, at *5 (E.D. Cal. May 25, 2012) (citing *Bostick v. Flex Equip. Co., Inc.*, 147 Cal. App. 4th 80, 88, 54 Cal. Rptr. 3d 28 (2007)); *see In re Avandia*, 624 F. Supp. 2d at 418-19. "In the prescription drug context, the California Supreme Court has held that manufacturers of prescription drugs can be held strictly liable for a failure to warn of knowable risks." *Mendez*, 2012 U.S. Dist. LEXIS 73270, at *6 (citing *Brown v. Sup. Ct.*, 44 Cal. 3d 1049, 1069, 245 Cal. Rptr. 412, 751 P.2d 470 (1988)). Although, California Courts have yet to address the liability of distributors and other potential defendants in the commercial chain in prescription drug cases, courts faced with that question in these circumstances have rejected the argument that McKesson is fraudulently joined and remanded such cases. *See, e.g.*, *In re Avandia*, 624 F. Supp. 2d at 419, 421; *Mendez*, 2012 U.S. Dist. LEXIS 73270, at *5-6, *11.

Thus, like the complaints evaluated by Judge Rufe (discussed above), Plaintiffs' allegations are sufficient to state a reasonable basis in fact, as well as colorable legal ground, supporting McKesson's liability. Nothing more is required of Plaintiffs at this stage. *In re Avandia*, 624 F. Supp. 2d at 418; *accord A.S. v. Pfizer, Inc.*, No. 1:13-cv-00524-LJO-JLT, 2013 U.S. Dist. LEXIS 76307, at *28 (E.D. Cal. May 30, 2013) ("Plaintiff has not only asserted that McKesson is a major distributor of Effexor, but has alleged also that 'Plaintiff is informed and believes Defendant McKesson *distributed the Effexor that was dispensed to [Plaintiff]*."); *Oliver v. McNeil-PPC, Inc.*, No. 1:12-cv-01865-AWI-SAB, 2013 U.S. Dist. LEXIS 14959, at *16 (E.D. Cal. Feb. 4, 2013) ("While defendants argue that the allegations in the complaint are too bare to state a claim that Defendant McKesson distributed the medication at issue in this action, they do not show by clear and convincing evidence that the failure is obvious according to

the settled rules of the state."). "Given that [P]laintiffs' alleged failure to state a cause of action against McKesson is not obvious according to the settled rules of the state, coupled with the fact that any doubts about removal are to be resolved in favor of remand," the Court should grant Plaintiffs' Motion to Remand. *Mendez*, 2012 U.S. Dist. LEXIS 73270, at *11.

### B. GSK's Federal Preemption and Learned Intermediary Legal Grounds Do Not Support McKesson's Purported Fraudulent Joinder.

There is likewise no merit to GSK's argument that remand should be denied because Plaintiffs' claims against McKesson are preempted by federal law or are barred under the "learned intermediary doctrine."

*First*, federal preemption is an affirmative defense that goes to the merits of Plaintiffs' claims, and, thus, cannot be considered when determining whether a non-diverse party has been fraudulently joined. As the United States Court of Appeals for the Ninth Circuit explained in *Hunter v. Philip Morris USA*:

> The preemption defense . . . goes to the merits of the plaintiff's case. When a defendant asserts that the plaintiff's claim is impliedly preempted by federal law, it cannot be said that the plaintiff's failure to state a claim against the resident defendant is "obvious according to the settled rules of the state." Rather, the preemption question requires an inquiry into the merits of the plaintiff's claims against all defendants and an analysis of federal law. In such a case, the defendant has failed to overcome the "strong presumption against removal jurisdiction."

582 F.3d 1039, 1045 (9th Cir. 2009) (citations omitted) (granting remand); *see also Charles v. ADT Sec. Servs.*, No. CV 09-5025 PSG (AJWx), 2009 U.S. Dist. LEXIS 123335, at *10 (C.D. Cal. Dec. 21, 2009) ("Though not raised by the parties, the Court further notes that an affirmative defense reaching the merits of a case should generally not provide the basis for a finding of fraudulent joinder."). Accordingly, federal preemption cannot form the basis of a finding of fraudulent joinder on a motion to remand. *See, e.g.*, *Pfizer,* 2013 U.S. Dist. LEXIS 76307, at *25-28 (holding that "it is inappropriate to examine whether a plaintiff's claims are preempted by federal law on a motion to remand" where

purportedly preempted claims against McKesson was asserted as a ground for removal).

Even if federal preemption could be raised as a ground for removal, GSK has not met its heavy burden of establishing there is no possibility of recovery against McKesson according to the settled rules of California. GSK asserts that *PLIVA, Inc. v. Mensing*, 131 S. Ct. 2567 (2011), which involved a generic drug manufacturer, bars Plaintiffs' claims against McKeeson, a drug distributor. However, *Mensing* "do[es] not necessitate that conclusion." *Smith v. Amylin Pharms., LLC*, No. 13-cv-1236 AJB (MDD), 2013 U.S. Dist. LEXIS 96612, at *12 (S.D. Cal. July 10, 2013). In *Smith*, the court properly granted remand after rejecting the defendant's argument that *Mensing* preempted the plaintiff's failure-to-warn claims against McKesson because, "unless and until [*Mensing*'s] rationale is extended to distributors, it is not obvious, according to the well settled rules of this state, that Plaintiff has absolutely no claim against McKesson." *Id.* at *12. Similarly, in *Marble v. Organon USA, Inc.*, this Court explained that Merk's argument that McKesson could not be held liable because federal law prohibits drug distributors from altering any part of a drug's FDA-approved label "is merely a policy argument and is not grounded in either California or federal law." No. C 12-02213 WHA, 2012 U.S. Dist. LEXIS 83520, at *18 (N.D. Cal. June 15, 2012). This Court remanded the case because Merk had not satisfied its heavy burden of establishing there was no possibility of recovery against a resident defendant according to the settled rules of California.[11] *Id.* at *19-20; *see also Halperin v. Merck, Sharpe & Dohme Corp.*, No. 11 C 9076, 2012 U.S. Dist. LEXIS 50549, at *11 (N.D. Ill. Apr. 10, 2012) ("[E]ven if we were inclined to agree with [the distributor] about the reach of the *Mensing* decision, we are bound to

---

[11] Both of the cases GSK cites in support of its *Mensing* preemption argument are inapposite because neither involved a motion to remand and a defendant's burden of proving there is no possibility of recovery against a resident defendant according to the settled rules of California. *See In re Fosamax (Alendronate Sodium Prod. Liab. Litig. (No. II)*, MDL No. 2011 U.S. Dist. LEXIS 135006, at *18 (D.N.J. Jan. 17, 2012) (ruling on motion for judgment on the pleadings); *Stevens v. Cmty. Health Care, Inc.*, No. ESCV2007-02080, 2011 Mass. Super. LEXIS 263, at *1 (Mass. Super. Ct. Oct. 5, 2011) (ruling on motion for summary judgment).

1  resolve such an open question of law in Plaintiffs' favor when assessing the remand motion."). The
2  same is true here.

3       And, assuming *arguendo* that *Mensing* had been extended to distributors, allegations that
4  McKesson failed to use non-labeling means to warn of Avandia's dangers or failed to convey labeling
5  and other warnings used by GSK would not be preempted. *See Teva Pharms. USA, Inc. v. Superior
6  Court*, 217 Cal. App. 4th 96, 106-15 (Cal. App. Ct. 2013) (holding that *Mensing* does not bar state law
7  failure-to-warn claims against generic manufacturers unless those claims require labeling that is
8  different from or in addition to labeling used by the brand manufacturer). In addition, it is not at all
9  clear that *Mensing* preempts California state law design defect like those brought here. *See Caouette v.
10 Bristol-Myers Squibb Co.*, No. C-12-1814, 2012 U.S. Dist. LEXIS 113980, at *25-26 (N.D. Cal. Aug.
11 17, 2012) (remanding action removed on the ground that McKesson was fraudulently joined because it
12 was not clear that *Mensing* would apply to California state law design defect); *Halperin*, 2012 U.S. Dist.
13 LEXIS 50549, at *8-11 (N.D. Ill. Apr. 10, 2012) (holding that *Mensing* does not bar design defect
14 claims against distributors of brand name drugs).

15      ***Second***, the *Avandia* MDL court, as well as other courts, also addressed and rejected GSK's
16 contention that the "learned intermediary doctrine" shields McKesson from liability as a legal matter.
17 As Judge Rufe ruled in rejecting the precise learned intermediary contention raised by GSK here,

> GSK . . . ignores the logical rulings of multiple federal district courts considering California law that the ***learned intermediary defense simply does not apply*** where a plaintiff alleges "that the manufacturer failed to adequately warn doctors of the danger of the drug," as Plaintiffs have done here. Indeed, due to the nature of Plaintiffs' claims against GSK, the learned intermediary doctrine appears to be inapplicable to any defendant, including McKesson.

22 *In re Avandia*, 624 F. Supp. 2d at 419-20 (emphasis added). Indeed, "[t]he doctrine, 'where it applies at
23 all, applies only if a manufacturer provided adequate warnings to the intermediary.'" *Pfizer*, 2013 U.S.
24 Dist. LEXIS 76307, at *16 (quoting *Stewart v. Union Carbide Corp.*, 190 Cal.App.4th 23, 29, 117 Cal.
25

Rptr. 3d 791 (2010)).  Further, "[t]he learned intermediary doctrine is a defense to a cognizable cause of action which courts do not ordinarily consider in determining fraudulent joinder." *Martin v. Merck & Co.*, No. Civ. S-05-750 LKK/PAN, 2005 U.S. Dist. LEXIS 41232, at *9-10 (E.D. Cal. Aug. 15, 2005) (citing *Ritchey v. Upjohn Drug Co.*, 139 F.3d 1313, 1318-19 (9th Cir. 1998)). The Court should, thus, reject GSK's learned intermediary defense as grounds for establishing diversity jurisdiction here.

### C. Removal Was Inconsistent with CAFA's Plain Language As Well As Congressional Intent.

Without question, and despite GSK's contrary protestations, the "mass action" provision of CAFA "gives plaintiffs the choice to file separate actions that do not qualify for CAFA jurisdiction . . . which are not removable under the plain language of the statute." *Anderson v. Bayer Corp.*, 610 F.3d 390, 393 (7th Cir. 2010).  Congress foresaw the possibility that plaintiffs could avoid CAFA jurisdiction by so structuring their cases and "specifically decided the issue in plaintiffs' favor." *Id.* (quoting *Tanoh v. Dow Chemical Co.*, 561 F.3d 945 (9th Cir. 2009). Plaintiffs have, therefore, structured there claims in accordance with governing law and rules and their case is not subject to CAFA jurisdiction.

GSK fails to cite any authority in support of its proposed application of CAFA as both *Knowles* and *Freeman*, at 14-15, are distinguishable.  To begin with, *Standard Fire Ins. Co. v. Knowles*, as GSK acknowledges, concerned a class action plaintiff who "sought to certify a class of 'hundreds, and possibly thousands' of similarly harmed Arkansas policyholders," while maintaining an agreement to "not seek damages that exceed $5 million in total" sufficient to "remove the case from CAFA's scope." 133 S. Ct. 1345, 1347.  The Court's analysis centered on the fact that "a plaintiff who files a proposed class action cannot legally bind members of the proposed class before the class is certified." 133 S. Ct. at 1349.  In the end, the Court observed that treating "a nonbinding stipulation as if it were binding" would "exalt form over substance."  133 S. Ct. at 1350.  As the Court observed, plaintiffs remain "masters of their complaints," and, as such, can enter into binding agreements, such as stipulating to

amounts below the federal jurisdictional requirement. 133 S. Ct. at 1350. Yet, as the Court added, "[t]hat essential feature is missing here, as Knowles cannot yet bind the absent class." 133 S. Ct. at 1350.

*Freeman v. Blue Ridge Paper Prods.*, 551 F.3d 405 (6th Cir. 2008) concerned a grouping of class actions, each involving identical parties, in which the plaintiffs limited their damages to less than CAFA's $5 million threshold. As the *Freeman* court made clear, "[o]ur holding is limited to the situation where there is no colorable basis for dividing up the sought-for retrospective relief into separate time periods, other than to frustrate CAFA." 551 F.3d at 409. GSK fails to indicate either fact. GSK summarily cites another case involving class actions, *Serrano v. 180 Connect, Inc.*, 478 f.3d 1018 (9th Cir. 2007), offering that opinion as standing for the proposition that "Plaintiffs cannot avoid removal by dividing class actions up into a number of classes of fewer than 100 members." (Resp. at 27.) The *Serrano* court makes clear to define "class action" as "any action filed under rule 23 of the Federal Rules of Civil Procedure or similar State statute…" 478 F.3d at 1020.

Unlike *Knowles*, this case does not involve "hundreds, and possibly thousands" of class action plaintiffs. As the *Knowles* Court observed, Plaintiffs are the "master of their complaints." Accordingly, Plaintiffs do not seek to bind absent class members to a limitation of damages. This case falls outside CAFA's reach where, as GSK concedes, this case involves less than 100 plaintiffs. Further, Plaintiffs have not filed multiple suits, much less multiple class actions, unlike in *Freeman*. Besides, the *Freeman* court was very careful to limit its holding "to the situation where there is no colorable basis for dividing up the sought-for retrospective relief into separate time periods, other than to frustrate CAFA." Finally, the *Serrano* court was careful to limit its discussion of CAFA within the class action context. Notwithstanding Congress's intent for federal jurisdiction to apply not only to Rule 23 class actions but also mass actions, Plaintiff's action does not so qualify and a majority of Plaintiffs have not consented,

in any event.

Finally, GSK misapprehends the distinction between Plaintiff's counsel's proposal for a single trial and a trial of joint class of 100 or more persons. Specifically, the statutory key is whether plaintiffs have proposed to join the claims of 100 or more persons in a "joint" or "mass trial" or a single trial that will address the claims of that many persons or more. *See Koral v. Boeing Co.,* 628 F.3d 945, 947 (7th Cir. 2011). It is undisputed that Plaintiffs herein did not request a joint trial of 100 or more persons and likewise do not seek a single trial that would address the claims of that many people. In response, GSK offers *Bullard v. Burlington Northern Santa Fe Railway Co.*, 535 F.3d 759 (7th Cir. 2008), which was expressly distinguished by another court in the Northern District of California, *Caouette v. Bristol-Myers Squibb Co*., 2012 WL 3283858 at *8. As the *Caulette* court made clear, "the request to relate cannot be deemed a request to join claims for trial." 2012 WL 3283858 at *9.[12]

### III. CONCLUSION

For the foregoing reasons, as well as those set forth in Plaintiff's Memorandum of Points and Authorities to Remand for Lack of Federal Subject Matter Jurisdiction, Plaintiff's case should be remanded.

---

[12] GSK tries hard to tie Plaintiffs to the declaration of a "Liaison counsel" to JCCP No. 4578, which it tries to fashion into a claim that Plaintiffs seek a single, consolidated adjudication. This is simply not the case. Apparently, GSK seeks to convince the court that a bellwether trial is one in which all claims are resolved in a single, final adjudication. GSK cites to *In re Abbott Laboratories*, which, like *Bullard*, was also distinguished by the Northern District of California. *Freitas v. McKesson Corp*., 2013 WL 685200 at *4 (February 25, 2013). In *Freitas*, the Court made clear that:

> no matter how convincing Defendants find the Seventh Circuit's reasoning [in *Abbott*], the Court is bound by the Ninth Circuit's ruling from *Tanoh*. In any event, *Abbott* concerned plaintiffs who had explicitly asked for their cases to be consolidated "through trial" and "not solely for pretrial proceedings." *Abbott,* 698 F.3d at 571. *Abbott* is therefore both distinguishable from *Tanoh* and not binding on the Court.

2013 WL 685200 at *4. Plaintiffs, like in *Freitas*, have not asked for their cases to be consolidated "through trial." Accordingly, this Court, like the *Caouette* and *Freitas* courts, should decline to adopt GSK's interpretation of Seventh Circuit case law.

DATED: August 2, 2013

Respectfully Submitted,

Law Offices of Sin-Ting Mary Liu

**/s/ Sin-Ting Mary Liu**
Sin-Ting Mary Liu (CA SBN 282884)
Law Offices of Sin-Ting Mary Liu
806 East Avenida Pico, Suite I-218
San Clemente, CA 92673
Tel: 949-342-4555
Fax: 760-304-8933
sintingmliu@gmail.com

Attorneys for Plaintiffs

PLAINTIFFS' REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION TO REMAND FOR LACK OF SUBJECT MATTER JURISDICTION
CASE NO: 4:13-CV-03054-SBA

**CERTIFICATE OF SERVICE**

I hereby certify that on August 2, 2013, I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the Electronic Mail Notice List, and I hereby certify that I caused the foregoing document or paper to be mailed via the United States Postal Service to the non-CM/ECF participants indicated on the Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on August 2, 2013.

DATED:  August 2, 2013

Respectfully Submitted,
Law Offices of Sin-Ting Mary Liu

**/s/ Sin-Ting Mary Liu**
Sin-Ting Mary Liu (CA SBN 282884)
Law Offices of Sin-Ting Mary Liu
806 East Avenida Pico, Suite I-218
San Clemente, CA 92673
Tel: 949-342-4555
Fax: 760-304-8933
sintingmliu@gmail.com

Attorneys for Plaintiffs